UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

BRUCE PARKER,

          Plaintiff,

v.

KENNETH MCKEE et al.,

          Defendants.
_____/

Case No. 2:18-cv-186

Honorable Gordon J. Quist

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant McKee.

## Discussion

    I.    Factual Allegations

Plaintiff Bruce Parker is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. He

sues the following MDOC employees at URF: Sergeant Lisa Belanger, Captain Unknown Burke, and Corrections Officers R. Benson and Unknown Olmstead. He also sues Kenneth McKee, the CFA Deputy Director for the MDOC.

Plaintiff alleges that he filed a lawsuit against fourteen URF prison officials in June 2018, alleging sexual abuse, retaliation, and deliberate indifference to his needs. On June 14, 2018, Plaintiff's father called Defendant McKee, asking McKee why Plaintiff was not being protected from sexual abuse. Plaintiff's father also asked McKee to have Plaintiff transferred to another facility.

McKee subsequently told staff at URF that Plaintiff's father had reported that Plaintiff was having suicidal thoughts, though Plaintiff contends his father did not say this. URF staff immediately responded to this information by placing Plaintiff in segregation, on suicide watch. The following day, Plaintiff filed a grievance about McKee's allegedly false statement and Plaintiff was released from segregation.

When Plaintiff arrived at his unit, he met with the prisoner counselor, who informed Plaintiff that he could not reside in that unit or on the "Eastside" of the facility because Plaintiff had been forced to perform fellatio on an officer and Plaintiff was still cooperating with the Michigan state police to investigate the incident. (Compl., ECF No. 1, PageID.4.) The prisoner counselor contacted Defendant Belanger, the facility's PREA[1] coordinator, for further guidance. Belanger allegedly told the prisoner counselor that Plaintiff would not be moving out of Eastside because he filed PREA complaints and would not give her the names of the officers who forced him to perform fellatio. Plaintiff filed a grievance about Belanger's decision. However, that same

---

[1] PREA is an acronym for the Prison Rape Elimination Act, 34 U.S.C. §§ 30301 et seq.

2

day, Plaintiff was moved from Eastside to Westside due to "security and safety concerns for Plaintiff." (*Id.*, PageID.5.)

On June 18, Plaintiff filed a grievance against the grievance coordinator for not processing Plaintiff's grievances.

On July 7, Plaintiff filed a grievance against Belanger for "falsifying" documents and completing a "bias[ed] and skewed investigation" into Plaintiff's allegation that an officer had sexually assaulted him during a pat-down search in May of that year. (*Id.*) Belanger allegedly lied and stated that the incident did not occur. Plaintiff filed a grievance against her for her report.

On July 27, Belanger filed an allegedly false misconduct report about Plaintiff, charging him with interfering with the administration of rules for reporting sexual abuse and assault. In the misconduct report, Belanger allegedly misreported Plaintiff's description of the alleged assault to another officer. Plaintiff filed a grievance about the misconduct report.

On October 8, Plaintiff was helping another prisoner fix his typewriter when Officers Olmstead and Benson approached and asked him what he was doing. Plaintiff explained that he was helping fix a typewriter. Benson and Olmstead asked Plaintiff if he was "writing more bullshit grievances or was [he] just complaining about some officer sexually assaulting [him]?" (*Id.*, PageID.6.) Benson told Plaintiff that he had spoken with other officers and had been given the "green light" on Plaintiff. (*Id.*) Benson and Olmstead allegedly "made it clear that any misconduct [they] choose to write . . . will be upheld by them and any grievance [Plaintiff] file[d,] they would make sure to be the ones to hear and then dismiss it." (*Id.*) Benson stated, "I should just put your ass in segregation; matter of fact I don't know why a officer hasn't had your ass whooped a long time ago." (*Id.*) Olmstead then added, "Yeah, we're going to stick together and

3

like you prisoners do . . . so the game is on." (*Id.*) Plaintiff filed a grievance about these comments.

On October 9, Plaintiff was called to the control center to meet with Captain Burke concerning a "false" misconduct on Plaintiff written by another officer. (*Id.*) Burke told Plaintiff, "If you don't drop your complaints and stop reporting sexual abuse by my officers I'm going to have you placed in segregation." (*Id.*) Plaintiff refused to do so. Burke called Plaintiff a racially derogatory term and stated, "I'm moving you to the Eastside to Neebish unit so every officer can get [their] dick suck since that's what you like doing. . . . I'm going to find you guilty of this misconduct and give you the maximum penalty allowed[.] File some grievances and it'll be worse." (*Id.*) That same day, Burke sanctioned Plaintiff with five days in top lock and 30 days of loss of privileges. Burke ordered that Plaintiff be moved to Neebish unit and Plaintiff was placed in segregation.

When packing up Plaintiff's property, Officer Benson allegedly "framed" Plaintiff by putting 30 packs of sugar in Plaintiff's property, and then wrote a false misconduct report claiming that Plaintiff was in possession of stolen property. (*Id.*)

In addition, Officer Olmstead wrote a false misconduct report claiming that Plaintiff engaged in insolence; she claimed that when he walked past her in the hallway, he put his hands in the air and said, "hands up, don't shoot." (*Id.*) Plaintiff denies making this statement.

The next day, Plaintiff reported Defendant Burke's threats and statements to a facilities inspector and to the Michigan state police.

On October 16, Officer Burke held a hearing on the misconduct reports written by Defendants Benson and Olmstead. Burke allegedly ignored Plaintiff's evidence and found Plaintiff guilty. He sanctioned Plaintiff with 5 days of top lock and 30 days of loss of privileges.

4

Based on the foregoing allegations, Plaintiff claims that Defendants retaliated against him for his protected conduct. He also claims that Defendants Belanger, Benson, Olmstead, and Burke denied him substantive due process when they charged him with misconducts and/or found him guilty without probable cause.

As relief, Plaintiff seeks compensatory and punitive damages.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the

5

*Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Defendant McKee**

Plaintiff contends that Defendant McKee retaliated against him by misinforming officials at URF that Plaintiff was having suicidal thoughts. As a result, Plaintiff was placed in segregation on suicide watch for a day.

1. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

6

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening). In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Plaintiff merely alleges the ultimate fact of retaliation. He alleges no facts from which to reasonably infer that Defendant McKee's actions were motivated by any of his protected conduct. He merely concludes that because he filed a lawsuit against other prison officials within a few weeks before Defendant's actions, those actions must have been motivated by the lawsuit. The Sixth Circuit, however, has been reluctant to find that temporal proximity between protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here,

7

the plaintiff is a prolific filer of complaints and grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff merely alleges temporal proximity between Defendant's conduct and his lawsuit. Such allegations are insufficient to state a retaliation claim.

2. Respondeat Superior

In addition, Defendant McKee is not liable merely because he was aware of the conduct of other officials at the MDOC. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant McKee engaged in any active unconstitutional behavior. Accordingly, Plaintiff fails to state a claim against him.

### B. Defendants Belanger, Benson, Olmstead, and Burke

Plaintiff states at least one claim against the remaining Defendants. Plaintiff's allegations are sufficient to state a retaliation claim against them.

### III. Preliminary Injunctive Relief

Plaintiff has filed a motion for a temporary restraining order that does not specify the specific injunctive relief that he seeks. (ECF No. 5.) Plaintiff contends that he is a victim of sexual assaults by URF officers and that Defendants have threatened to retaliate against him for his protected conduct by "tampering" with his food and filing false misconducts. (*Id.*, PageID.48.)

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305

F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing. It is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his claims, which are primarily retaliation claims.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. There is no indication that Defendants have or will engage in any conduct that will cause irreparable harm. Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not been made here. Accordingly, Plaintiff's motion for preliminary relief will be denied.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant McKee will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's motion for a temporary restraining order will be denied.

An order consistent with this opinion will be entered.

Dated: November 30, 2018 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE